IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**LEE ROY ROMERO,**

        **Plaintiff,**

**v.**                                             **No. CIV. 07-1093 MV/RHS**

**ERIC SCHUM,**

        **Defendant.**

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment, filed September 30, 2008, **[Doc. No. 30]** and Plaintiff's Motion for Summary Judgment, filed September 30, 2008, **[Doc. No. 31]**.  The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the Plaintiff's motion is not well-taken and will be **DENIED**.  The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that Defendant's motion is also not well-taken and will be **DENIED.**

**BACKGROUND**

      The following uncontroverted facts are taken from the Defendant's Motion for Summary Judgment, filed September 30, 2008, **[Doc. No. 30]** and Plaintiff's Motion for Summary Judgment, filed  September 30, 2008, **[Doc. No. 31]**.

      Defendant Schum is a patrolman with the New Mexico State Police.  On April 30, 2006, he spoke with Louisa Maestas regarding her runaway daughter.  Ms. Maestas had not seen her

1

daughter, Eve, since April 22, 2006 and believed that Eve had gone to Albuquerque with her boyfriend, Kevin Romero. She further told Defendant that either Plaintiff or his wife had encouraged Eve to disobey her mother. Responding to that information, Defendant went to Plaintiff's home on May 9, 2006 to attempt to locate Eve at the Plaintiff's home. Plaintiff is the father of Kevin Romero. Defendant arrived at the Romero residence at approximately 10:30 pm and found both the Plaintiff and his wife, Evangeline Romero at the home.

Plaintiff and Mrs. Romero confirmed to the Defendant that they were aware that Eve had run away from home and had stayed with them the previous night. Defendant knew that Eve had run away before and was not missing against her will. Defendant did not have information or evidence to suggest that Eve was being abused or a victim of domestic violence when he interviewed the Plaintiff and Mrs. Romero.

After taking statements from Plaintiff and Mrs. Romero, Defendant requested their birth dates and social security numbers as they were considered witnesses in the investigation. Mrs. Romero immediately complied with Defendant's request. Plaintiff initially refused to provide his social security number, but then did provide Defendant with a date of birth of April 25, 1951.

Defendant returned to his vehicle and requested that dispatch run Plaintiff's name and the birth date given for confirmation. Dispatch then informed Defendant that there was no record on file for the Plaintiff with that birth date, meaning that the identifying information that Plaintiff had provided was incorrect.

As a result of that information, Defendant returned to Plaintiff's residence to request additional information from him. After Defendant knocked on the front door, it was answered by Mrs. Romero and Plaintiff when they opened the door to Defendant. Defendant requested additional

identifying information or a social security number from Plaintiff and Plaintiff refused to provide the requested information or social security number. Defendant then informed Plaintiff that he was under arrest for concealing his identity. As Defendant reached forward to handcuff Plaintiff, Plaintiff retreated inside of his home to avoid arrest. Defendant followed Plaintiff into Plaintiff's home and arrested Plaintiff against a couch. Defendant handcuffed Plaintiff and escorted him to the police vehicle for transport. At no time during the arrest did Plaintiff articulate a complaint about a previous injury or any pain that he may have been in.

Plaintiff subsequently filed suit against Defendant in a four count complaint seeking damages pursuant to 42 U.S.C. §1983 for illegal entry into his home in violation of the 4th Amendment and unlawful arrest and use of unlawful force in violation of the 4th Amendment, as well as punitive damages under §1983, and battery pursuant to NMSA 1978 §41-4-1. **[Doc. No. 1]**

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 569(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

## **DISCUSSION**

A.  Qualified Immunity

"In an action under section 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999). Once a defendant has raised qualified

immunity as an affirmative defense, the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). . . . . If the court concludes no constitutional right has been violated, no further inquiry is necessary and the defendant is entitled to qualified immunity. *Id.  Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007); *see Pearson v. Callahan*, ___ U.S. ___, ___, 129 S. Ct. 808, 816 (2009) (holding that, "while the sequence set forth [in *Saucier v. Katz*, 533 U.S. 194, 201 (2001)] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

It is well settled that, if an arrest is lawful and made with a warrant and/or probable cause, no Fourth Amendment violation has occurred. *See Smyth v. City of Lakewood*, No. 95-1481, 1996 WL 194715, at *3 (10th Cir. 1996) (noting that, "if the arrest was lawful Mr. Smyth's Fourth Amendment rights could not have been violated").

Although qualified immunity will shield neither the "plainly incompetent nor those who knowingly violate the law", (*Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001), an individual defendant is entitled to qualified immunity in a §1983 action unless the defendant violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Because the Defendant has asserted a defense of qualified immunity, the burden shifts to the Plaintiff to establish that the law and facts at issue establish that qualified immunity does not apply.

*Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1026 (10th Cir. 1994). "The plaintiff must 'come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred.'" *Dixon v. Riche*, 922 F.2d 1456, 1460 (10th Cir. 1990) (*quoting Pueblo Neighborhood Health Centers, Inc. V. Losavio*, 847 F.2d 642, 646 (10th Cir. 1998).

    1.    Probable Cause for Arrest

It is undisputed that a law enforcement officer has the authority to ask a person for identification whether or not the individual is a suspect in a crime. "[I]n the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel v. Sixth Judicial Court of Nevada*, 542 U.S. 177, 185, 124 S. Ct. 2451, 2458 (2004); *see generally INS v. Delgado*, 446 U.S. 210, 216, 104 S. Ct. 1758 (1984); *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968). In this case, Defendant clearly had a legitimate reason to gather the requested information from Plaintiff. Not only was Plaintiff a potential witness regarding the runaway child, but he admitted to knowing that the child had run away from home and he had allowed her to stay in his home. The Defendant's request was proper and at that time Defendant had no probable cause to arrest Plaintiff.

An officer does have probable cause to arrest a person for concealing his or her identity if that person persistently refuses to provide their identity during a lawful investigative stop. *See Albright v. Rodriguez*, 51 F.3d 1531 (10th Cir. 1995). After learning that Plaintiff's stated information was not on file, Defendant returned to Plaintiff's home and requested additional identifying information. Had Plaintiff provided the correct information as requested, this matter

6

would have ended there.  However, Plaintiff chose not to comply with Defendant's request and instead, refused to provide the requested information.  Defendant's reliance on the information provided to him from dispatch was not unreasonable or in error.  *See United States v. Hensley*, 469 U.S. 221, 231 (1985); *United States v. Shareef*, 100 F.3d 1491, 1505-06(10th Cir. 1996); *United States v. Mounts*, 248 F.3d 712 (7th Cir. 2000).

At the point that Defendant received the information from dispatch indicating that Plaintiff had not provided correct information, and upon Plaintiff's refusal to provide any additional information, Defendant had probable cause to arrest Plaintiff for concealing his identity.  *Albright v. Rodriguez*, 51 F.3d 1531 ( 10th Cir. 1995).  Plaintiff argues that no probable cause existed to believe that Plaintiff had committed an offense and therefore he was entitled to refuse any request to provide identification.  This is in error.  Had Plaintiff initially refused to provide the requested information, his current argument might have had merit.  However, Plaintiff knowingly and intentionally provided Defendant with false information, thereby attempting to conceal his identity from Defendant.  Plaintiff relies upon the holding in *Keylon v. City of Albuquerque*, 535, 1216, F.3d 1210 (10th Cir. 2008) *citing Brown v. Texas*, 443 U.S. 47, 99 S. Ct. 2637, 61 L.Ed. 2d 357 (1979) where the court found that "[i]n evaluating the existence of probable cause, [the Court] consider[s] whether the facts and circumstances within the officer's knowledge ... are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." The Court in *Keylon* further held that absent "reasonable suspicion of some predicate, underlying crime" and arrest for "concealing identity" is unconstitutional.

However, as the Defendant pointed out, *Keylon* was decided in 2008 and the events in this case occurred in 2006, and *Keylon* can easily be distinguished from the case now before the Court.

7

The plaintiff in Keylon was neither a witness nor a suspect in a crime so it was questionable as to whether there was reasonable suspicion to stop and investigate the plaintiff. *Id.* 1213, 1216. In this case, the Plaintiff was clearly a witness and a possible suspect in a crime if he had knowingly permitted the runaway child to stay in his home.

In *Keylon*, the plaintiff was evasive about when she would provide her identification stating that she would do so "when she was ready". *Id*. at 1213. The court found that mere evasiveness does not violate the concealing identity statute. However, in this case, Plaintiff first refused to provide information, then provided false information, then refused to provide additional information when asked. This is more than simple evasiveness or delay.

The crime of concealing identity is defined at NMSA §30-22-3 (1978) as "...concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state. Whoever commits concealing identity is guilty of a petty misdemeanor."

Pursuant to the New Mexico misdemeanor-arrest rule, and consistent with the Fourth Amendment, a law enforcement officer may arrest an individual if he has probable cause to believe that the individual has committed a misdemeanor in his presence. See *Cave v. Cooley*, 48 N.M. 478, 152 P.2d 886 (1944). Here, the evidence clearly establishes that Defendant had probable cause to arrest Plaintiff for the misdemeanor offense of concealing his identity.

Probable cause to arrest exists when an officer has learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested. *United States v. Guerrero-*

*Hernandez*, 95 F.3d 983, 986 (10th Cir. 1996). In the probable cause determination, [courts] look[] at the totality of the circumstances of each particular case. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Here, there was an abundance of reasonably trustworthy information available to Defendant that would lead a reasonable person to believe that Plaintiff was committing the offense of concealing his identity, namely that he concealed his true name or identity with the intent of hindering Defendant's performance of his duties. Plaintiff was not arrested for failure to provide information, but rather for providing false information.

2. Arrest.

A law enforcement officer may arrest a person without a warrant if there exists probable cause to believe that a person has committed a crime. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995), citing *Beck v. Ohio*, 379 U.S. 89 (1964). When an arrest without a warrant is the subject of a §1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff, even if the officer reasonably, but mistakenly, concluded that probable cause existed. *Id.*

In his Response to Defendant's Motion for Summary Judgment, **[Doc. No 34]**, Plaintiff agrees that "[t]he validity of a warrantless arrest depends on whether Defendant Schum had probable cause to believe that Plaintiff Romero had concealed his identification." **[Doc. No. 34 at page 7]**. As discussed above, Defendant did have probable cause to believe that Plaintiff had concealed his identification.

Once Defendant had probable cause to arrest the Plaintiff, the question becomes whether

9

Defendant's entry into Plaintiff's home to effect the arrest violated Plaintiff's Fourth Amendment right against an unreasonable seizure.

The Fourth Amendment provides that "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *See Payton v. New York*, 445 U.S. 573, 589-90 (1980). In *Payton*, the Supreme Court, recognizing that the Fourth Amendment has drawn a firm line at the entrance to the home, held that "seizures inside a home without a warrant [for the purpose of making a felony arrest] are presumptively unreasonable." *Id.* at 586.

The Court left open two ways to overcome this presumption: first, by showing probable cause *and* exigent circumstances; or (2) by showing consent to the entry. *See id.* at 583, 590. The rule enunciated in *Payton* is clear. In order to make a lawful entry for the purpose of effectuating a felony arrest, police officers, *absent* consent, must either obtain a warrant or have probable cause *and* exigent circumstances." *Id.* at 586; *see Kirk v. Louisiana*, 536 U.S. 635, 122 S.Ct. 2458, 153 L.Ed 599 (2002). *Payton's* requirements have also been applied to the nonconsensual entry of law enforcement into the home to make warrantless arrests for *nonfelonious* offenses. *See Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). This Court, cognizant of the special protection that the Fourth Amendment affords to individuals within the privacy of their homes, has been particularly vigilant in assessing the conduct of Defendant in the case at hand.

Because Defendant's entry into Plaintiff's home when he returned to gather additional information regarding Plaintiff's identity was not consensual, the Court analysis will focus on the

*Payton* Court's first way to overcome the presumption. This requires two elements be met, 1.) that there be a showing of probable cause, and 2.) that exigent circumstances exist.

As the Court found above, Defendant did have probable cause to arrest the Plaintiff and as such, the first part of the test has been met. The next analysis is whether exigent circumstances existed such as to permit Defendant to enter Plaintiff's home without a warrant to make the arrest.

Warrantless arrests in the home are presumptively unreasonable, and "[w]hen the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate." *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984). Additionally, an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made. Moreover, although no exigency is created simply because there is probable cause to believe that a serious crime has been committed ... application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense ... has been committed. *Id.* at 753. Finally, the Supreme Court has noted "that it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." *Id*.

"[T]here is no absolute test for the presence of exigent circumstances because such a determination depends on the unique facts of each controversy." *United States v. Wicks*, 995 F.2d 964, 970 (10th Cir.), cert. denied, 510 U.S. 982, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993) (internal quotations omitted). However, in *United States v. Smith*, 797 F.2d 836 (10th Cir.1986), the Tenth Circuit outlined the basic aspects of the 'exigent circumstances' exception as: (1) the law

11

enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched." *US. v. Smith*, 797 F.2d at 840.

Defendant arrested Plaintiff for the minor offense of misdemeanor concealing identity. Defendant has not asserted any reasonable grounds to believe that he felt an immediate need to protect his life, the lives or others or his property or that of others. Further, the entry was motivated by an intent to arrest the Plaintiff. Finally, there was no reasonable basis, approaching probable cause, to associate an emergency with the need to arrest the Plaintiff without a warrant. Consequently no exigent circumstances existed such that the entry would be permitted under *Payton*.

The analysis does not end there, however. In *United States v. Santana*, 427 U.S. 38, 43, 96 S. Ct. 2406, 2410 (1976), the Supreme Court reasoned that the opened doorway of a home is not subject to Fourth Amendment protections when it is knowingly exposed to the public. Citing *Katz v. United States*, 389 U.S. 347, 351 (1967). The Supreme Court has also held that a suspect may not defeat arrest which has been set in motion by attempting to escape into a private place. *Santana*, 427 U.S. at 43, *Illinois v. McArthur*, 531 U.S. 326, 101 S. Ct. 946 (2001).

When Defendant returned to Plaintiff's home, shortly after departing with the false information that Plaintiff had provided, he arrived alone and knocked on the Plaintiff's door. Plaintiff's wife voluntarily opened the door to Defendant. After Defendant unsuccessfully tried to obtain additional identifying information from Plaintiff, Defendant informed Plaintiff that he was under arrest. When told he was under arrest, Plaintiff retreated further into his home in an effort to

avoid arrest. The *Santana* Court reasoned that when a person knowingly exposes herself to the public, even if it is within her home or office, they are not subject to Fourth Amendment protection. *Santana*, 427 U.S. at 42. The *Santana* Court held that "... a suspect may not defeat arrest which has been set in motion in a public place ... by the expedient of escaping into a private place." *Id.* at 43. In *Santana*, the defendant was in the doorway, a public place, and retreated into her house after the police attempted to arrest her in a public place. Here, whether Plaintiff was in his doorway is in dispute.

In McKinnon v. Carr, 103 F.3d 934 (Ct. App. 10th Cir. 1996), the Court held that "[T]he district court did not err in holding that the arrest at the doorway was not invalid. As in *U.S. v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), the suspect was visible, standing in the threshold of his doorway, open to public view. He was in a place sufficiently public that he had no legitimate expectation of privacy. The officers had knocked, identified themselves, neither displayed nor threatened violence, and petitioner had opened the door. In McKinnon, the petitioner opened the door and was standing in the threshold of his doorway, whereas here Plaintiff's wife opened the door and Plaintiff remained behind his wife.

Although most of the material facts in this case are not in dispute, there remains one very important material fact this is in dispute; exactly where the Plaintiff standing when the Defendant first attempted to place him under arrest, and what impact that has upon whether the Defendant violated Plaintiff's Fourth Amendment rights when Defendant entered Plaintiff's home to place Plaintiff under arrest. Neither party, in their Motion for Summary Judgment, has demonstrated the absence of a genuine issue of material fact that would allow the Court to grant summary judgment for either party.

## **CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment, filed September 30, 2008, **[Doc. No. 31]**, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, filed September 30, 2008, **[Doc. No. 30]**, is also **DENIED.**

Dated this 31st day of March 2009.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiffs:

Sharon B Hawk
820 5th Street, NW
Albuquerque, NM 87102

Joe M. Romero, Jr.
1905 Lomas Blvd. NW
ALBUQUERQUE, NM 87104

Attorneys for Defendants:

Christina L Brennan
Brennan & Sullivan PA
128 East DeVargas
Santa Fe, NM 87501

James P Sullivan
Brennan & Sullivan, P.A.
128 East DeVargas
Santa Fe, NM 87501