IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LEE ROY ROMERO,

       Plaintiff,

v.                                                  Civ. No. 07-1093 MV/RHS

OFFICER ERIC SCHUM,
an Officer Employed by the
New Mexico State Police,
Individually,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Renewed Motion for Judgment as a Matter of Law Pursuant to Federal Rule 50(b), filed June 27, 2009 (Doc. No. 90). The Court, having reviewed the trial transcript and the exhibits admitted at trial, and for the reasons stated below, will **DENY** the Motion.

**Background**

In May, 2006, Defendant, an officer of the New Mexico State Police, went to Plaintiff's home to investigate a claim that a runaway juvenile might be at Plaintiff's home. (Complaint ¶¶ 3, 4, Doc. No. 1-2, filed October 30, 2007). Plaintiff claimed that he did not give Defendant consent to enter his home and that Defendant unlawfully entered Plaintiff's home to arrest Plaintiff thereby violating Plaintiff's Fourth Amendment right to be free from unlawful entry. (*Id.* ¶¶25-31).

This case was tried before a jury on June 1-3, 2009. (*See* Clerk's Minutes, Doc. No. 83, filed June 3, 2009). The jury found that Plaintiff did not prove that Defendant violated Plaintiff's Fourth Amendment right to be free from unlawful entry. (*See* Redacted Jury Verdict, Doc. No. 87, filed June 4, 2009).

**Standard of Review**

In determining a motion for judgment as a matter of law, the Court "should review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 150 (2000).

> In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

*Id.* (citations and quotation marks omitted).

"A party is entitled to judgment as a matter of law only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Brown v. Gray*, 227 F.3d 1278, 1285 (10th Cir. 2000); *see also Danner v. International Medical Marketing, Inc.*, 944 F.2d 791, 793 (10th Cir. 1991) ("if, on the basis of the evidence and inferences to be drawn therefrom, reasonable and fair-minded persons might form different conclusions as to the facts in issue, a directed verdict is improper"); *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996)("The test is a strict one, and *a directed verdict for the party having the burden of proof may be granted only where he has established his case by evidence that the jury would not be at liberty to disbelieve."*)(*emphasis in original*). In reviewing the record, the Court "will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Brown v. Gray*, 227 F.3d at 1285. "Judgment as a matter of law is appropriate if there is no legally sufficient evidentiary basis for a claim under the controlling law." *Id.* The Court "consider[s] the evidence, and any inferences drawn therefrom, in favor of the non-moving party." *Id.*

**Plaintiff's Location When Arrested**

Plaintiff argues that the "facts presented at trial do not sufficiently support a finding that [Plaintiff] Lee Roy Romero was standing anywhere but behind the threshold of his door when Defendant Schum arrested him." (Motion at 1). Plaintiff contends that "Accordingly, *Payton v. New York*, 445 U.S. 573 (1979) [sic] governs the analysis in this matter, and not *United States v. Santana*, 427 U.S. 38 (1976), and, therefore, "Defendant Schum could not have lawfully entered Plaintiff's home to effectuate his arrest unless Defendant had probable cause and exigent circumstances." (Motion at 1).

*Payton* considered the unrelated arrests of two persons, Theodore Payton and Obie Riddick. After assembling sufficient evidence to establish probable cause that Theodore Payton had murdered a gas station manager, six police officers went to Payton's apartment to arrest him. *Payton*, 445 U.S. 573, 576 (1980). The police officers had not obtained a warrant. *Id.* After receiving no response to their knock on the door, they broke open the door, entered the apartment and seized evidence that was in plain view. *Id.* In Obie Riddick's case, the police went to Riddick's house without a warrant for his arrest. *Id.* at 578. After the officers knocked on Riddick's door, Riddick's son opened the door such that the officers could see Riddick sitting in the house. *Id.* The officers then entered the house, conducted a search and arrested Riddick. Id. The trial judges for Payton and Riddick both concluded that the warrantless entries into Payton's and Riddick's residences were authorized by a New York statute. *Id.* The United States Supreme Court reversed the judgments against Payton and Riddick holding that the Fourth Amendment prohibits police from making warrantless and nonconsensual entry into a suspect's home in order to make an arrest. *Id.* at 602.

In *Santana*, police officers went to Santana's house to arrest her and/or recover bait money used in an undercover drug purchase. *United States v. Santana*, 427 U.S. 38, 39-41 (1976). As the

3

officers approached Santana's house, they "saw Santana standing in the doorway of the house." *Id.* at 40. One officer indicated that Santana "was standing directly in the doorway one step forward would have put her outside, one step backward would have put her in the vestibule of her residence." *Id.* n.1. As the officers approached Santana, shouting "police" and displaying their identification, Santana retreated into the vestibule of her house. *Id.* at 40. The officer followed through the open door, catching Santana in the vestibule. The Supreme Court of the United States stated:

> While it may be true that under the common law of property the threshold of one's dwelling is "private," as is the yard surrounding the house, it is nonetheless clear that under the cases interpreting the Fourth Amendment Santana was in a "public" place. She was not in an area where she had any expectation of privacy. "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house. *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924). Thus, when the police, who concededly had probable cause to do so, sought to arrest her, they merely intended to perform a function which we have approved in *Watson*.

*Id.* at 42; *see also United States v. Watson*, 423 U.S. 411(1976)(holding that the warrantless arrest of an individual in a public place upon probable cause did not violate the Fourth Amendment). The United States Supreme Court concluded that a suspect may not defeat an arrest which has been set in motion in a public place by escaping to a private place. *Santana*, 427 U.S. at 43.

The Court has reviewed all the evidence in the record. That evidence includes photographs of the doorway from both inside and outside of Plaintiff's residence, a video recording from the officer's police car showing the encounter between Plaintiff and Defendant, testimony by Defendant, Plaintiff and Plaintiff's wife who was present during the encounter and arrest, and a demonstration in the court room showing the jury the Plaintiff's location with respect to the doorway immediately prior to his arrest.

Having reviewed the evidence, the Court concludes that Plaintiff is not entitled to judgment as a matter of law because the evidence does not point only one way and is susceptible to reasonable inferences supporting Defendant. Defendant testified that Plaintiff was "standing in the doorway," and later testified that Plaintiff was "at" the doorway. (Hearing Transcripts for the afternoon of June 1, 2009 (file name: schum060109a.txt) at 75:3-4, and for the morning of June 2, 2009 (file name: schum060209a.txt) at 9:17-19).[1] When asked "Do you have any doubt whatsoever that [plaintiff] was at that doorway," Defendant responded "No." (Hearing Transcript for the morning of June 2, 2009 (file name: schum060209a.txt) at 31:2-4). Although Plaintiff points to various evidence to support his argument that he was not in the doorway, the Court may not weigh evidence or judge witness credibility. Defendant's testimony that Plaintiff was in or at the doorway provides an evidentiary basis on which reasonable and fair-minded persons might form different conclusions as to Plaintiff's location at the time of his arrest.

**Probable Cause**

Defendant arrested Plaintiff on May 9, 2006 for concealing his identity. (*See* Complaint at 2). Prior to the trial, the Court, ruling on a motion for summary judgment, concluded that Defendant had probable cause to arrest Plaintiff for the misdemeanor offense of concealing his identity. (*See* Memorandum Opinion and Order at 8, Doc. No. 48, filed March 31). Plaintiff requests the Court "to determine as a matter of law that Defendant lacked the requisite probable cause to arrest Plaintiff pursuant to *Keylon*." (Motion at 7). *Keylon* states "to arrest for concealing identity, there must be reasonable suspicion of some predicate, underlying crime." *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008).

---

[1]The Court's citations to the trial transcript refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

5

The Court will not "determine as a matter of law that Defendant lacked the requisite probable cause to arrest Plaintiff pursuant to *Keylon*" because *Keylon* was decided two years after Defendant arrested Plaintiff. Plaintiff cites no other legal authority showing that the established law, at the time Defendant arrested Plaintiff for concealing identity, required that there must be reasonable suspicion of some predicate, underlying crime. An earlier case involving New Mexico's concealing identity statute did not state that an officer must have reasonable suspicion of some predicate, underlying crime before arresting a person for concealing identity. *See Albright v. Rodriguez*, 51 F.3d 1531, 1537 (10th Cir. 1995)(("Twice the Supreme Court has specifically refused to determine whether an individual can be arrested for refusing to identify himself in the context of a lawful investigatory stop. The issue remains unsettled.").

The Court will deny Plaintiff's Renewed Motion for Judgment as a Matter of Law Pursuant to Federal Rule 50(b), filed June 27, 2009 (Doc. No. 90).

**IT IS SO ORDERED.**

Dated this 17th day of March, 2010.

 _____
 **MARTHA VAZQUEZ**
 **CHIEF UNITED STATES DISTRICT JUDGE**

*Attorneys for Plaintiff:*

Joe M. Romero , Jr.
1905 Lomas Blvd. NW
Albuquerque, NM 87104

Sharon B. Hawk
820 5th Street, NW
Albuquerque , NM 87102

*Attorneys for Defendant:*

Christina L Brennan
James P Sullivan
Brennan & Sullivan, P.A.
128 East DeVargas
Santa Fe , NM 87501