IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LEE ROY ROMERO,

        Plaintiff,

v.                                No. 07-CV-1093 MV/RHS

OFFICER ERIC SCHUM,
an Officer Employed by the
New Mexico State Police,
Individually

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Reconsider Denial of Motion for Judgment as a Matter of Law (Doc. 123), filed November 10, 2011. The Court, having considered the motion, briefs, the relevant law, and being otherwise fully informed, finds that the motion shall be **GRANTED** for the reasons stated herein.

### BACKGROUND

At approximately 10:30 p.m. on May 9, 2006, Defendant Eric Schum, a New Mexico State Police officer, arrived at the residence of Plaintiff Lee Roy Romero and his wife, Evangeline Romero. Defendant's purpose in visiting the Romeros' residence was to look for Eve Maestas, a sixteen-year-old runaway girl who had been missing for approximately two weeks. Plaintiff's son, Kevin Romero, who was twenty years old at the time, was dating Eve, and Plaintiff and his wife were aware that Eve had been reported missing.

Evangeline Romero answered the door and spoke with Defendant, and soon thereafter she called Plaintiff to the door. The tone of their conversation was calm and cordial. Mrs.

Romero informed Defendant that Kevin and Eve had been at the Romeros' residence the previous night, but had left early in the morning. She explained that Kevin and Eve were dropped off – and without their own transportation – at 1:00 a.m., so the Romeros allowed them to stay. The Romeros also told Defendant that they had not permitted Eve and Kevin to sleep in the same bed, as they were not married. At trial, Defendant testified that the Romeros were cooperative when he questioned them about Eve's whereabouts.

Defendant asked Mrs. Romero if she was aware that Eve's mother had reported her missing, to which Mrs. Romero responded in the affirmative. Mrs. Romero further stated that she regularly spoke to Eve's mother, and had already informed her that Kevin and Eve had spent the previous night at the Romeros' home. Defendant told Mrs. Romero that he did not want her or her husband to get in trouble, and he instructed them to contact the police if Eve returned to their home. According to Defendant, he had no reason to believe that Mrs. Romero was lying when she said Kevin and Eve were no longer in the home.

Because Defendant needed the Romeros' information for his witness report, he asked for Plaintiff's name and date of birth, which Plaintiff provided. When Defendant requested Plaintiff's social security number, he refused. Defendant persisted, explaining that Plaintiff was part of the case, and although he was not being charged with a crime, his name would appear in the police report. Plaintiff adamantly refused to provide his social security number. Although Defendant appeared frustrated at Plaintiff's refusal, he left the Romeros' home and told them he would leave them alone.

When Defendant ran Plaintiff's information through central dispatch, he learned that no record existed for the name and date of birth that Plaintiff had provided. In Defendant's experience, this indicated that the individual providing the information was being untruthful,

2

usually due to an active warrant for their arrest. Defendant returned to the Romeros' residence and arrested Plaintiff for concealing identity, a misdemeanor in violation of New Mexico law. *See* N.M. STAT. ANN. § 30-22-3.

Plaintiff commenced this lawsuit, alleging that Defendant's actions in arresting him amounted to a violation of 42 U.S.C. § 1983 as well as the New Mexico Tort Claims Act. The case proceeded to trial on June 1, 2009, and the jury ultimately found for Defendant. In proceedings both before and after trial, Plaintiff contested the constitutionality of his arrest for concealing identity, on grounds that Defendant lacked reasonable suspicion to believe that Plaintiff had committed an underlying predicate offense. In a Memorandum Opinion and Order dated March 17, 2010 (Doc. 98), the Court denied Plaintiff's motion for judgment as a matter of law. As grounds for this denial, the Court held that at the time of trial, it was not clearly established law in the Tenth Circuit that an officer may not arrest an individual for concealing identity absent reasonable suspicion of an underlying offense.

In a mandate dated March 9, 2011, the Tenth Circuit reversed this Court's order. (Doc. 117.) This Court's order had relied on the fact that the 2008 case of *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008) – which held that "to arrest for concealing identity . . . , there must be reasonable suspicion of some predicate, underlying crime" – was not clearly established in 2006. In its order reversing this Court, the Tenth Circuit held that the holding in *Keylon* was simply an application of black letter Fourth Amendment law established nearly thirty years earlier by the United States Supreme Court in *Brown v. Texas*, 443 U.S. 47 (1979). In *Brown*, the Supreme Court held that an officer's authority under Texas law to detain an individual and require him to identify himself violated the Fourth Amendment where the officer "lacked any reasonable suspicion to believe [the individual] was engaged or had engaged

3

in criminal conduct." *Id*. at 53.  In its remand, the Tenth Circuit instructed this Court to determine whether or not, at the time of Plaintiff's arrest, Defendant had reasonable suspicion to believe he had committed an underlying offense, namely contributing to the delinquency of a minor.  The Tenth Circuit further instructed: "The district court must determine how the New Mexico courts would interpret [the contributing to the delinquency of a minor statute] in like circumstances and then evaluate the evidence to determine if it shows the reasonable suspicion of a violation required under the Fourth Amendment."  Doc. 117 at 13 (citation and alterations omitted).

## ANALYSIS

Plaintiff argues that the record in this case, including Defendant's trial testimony, is sufficient to establish that Defendant did not have reasonable suspicion to arrest Plaintiff for contributing to the delinquency of a minor or any underlying predicate crime.  Defendant argues that the record contains very few facts regarding the subject of probable cause or reasonable suspicion to arrest for an underlying offense, because the Court permitted only limited testimony on this issue during trial, and factual disputes remain that must be resolved by a jury.  Alternatively, Defendant argues that the record is indeed sufficient to establish that Defendant had reasonable suspicion to arrest Plaintiff for the underlying offense of contributing to the delinquency of a minor.

The Court agrees with Plaintiff that the facts established during the summary judgment stage and at trial are sufficient for the Court to determine that Defendant did not have reasonable suspicion that Plaintiff had contributed to the delinquency of a minor or committed any other underlying offense.  Having determined that no reasonable suspicion existed to arrest Plaintiff for an underlying predicate offense, the Court concludes that the arrest was unconstitutional.

I.   **Reasonable Suspicion**

Reasonable suspicion is a lesser standard than probable cause, "but it does demand something more than an inchoate and unparticularized suspicion or hunch." *Romero v. Story*, 672 F.3d 880, 886 (10th Cir. 2012) (citation omitted). An officer's reasonable suspicion must be based on "specific and articulable facts and rational inferences drawn from those facts." *United States v. Chavez*, 660 F.3d 1215, 1221 (10th Cir. 2011). In determining whether reasonable suspicion exists, the Court must employ a "totality of the circumstances" approach, "rather than assessing each factor or piece of evidence in isolation." *United States v. Salazar*, 609 F.3d 1059, 1068 (10th Cir. 2010). An officer's subjective beliefs and intentions are irrelevant, *United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011); the relevant question is "whether the facts available to the detaining officer, at the time, warranted an officer of reasonable caution in believing the action taken was appropriate." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). In making this assessment, the Court must "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *McHugh*, 639 F.3d at 1256.

II.   **Contributing to the Delinquency of a Minor**

New Mexico law defines contributing to the delinquency of a minor as follows: "any person committing any act or omitting the performance of any duty, which act or omission causes or tends to cause or encourage the delinquency of any person under the age of eighteen years." N.M. STAT. ANN. § 30-6-3. As is pertinent to the instant case, this offense involves the elements of causing or encouraging the minor in question to either refuse to obey the reasonable and lawful commands or directions of her parent, or conduct herself in a manner injurious to her morals, health or welfare. *See* NMRA, Crim. UJI 14-601. As stated above, the New Mexico

5

courts' interpretation of this statute must guide the Court's analysis. *See Tibbetts*, 396 F.3d at 1138.

The purpose of the contributing to the delinquency of a minor statute is "to protect children from harmful adult conduct." *State v. Barr*, 984 P.2d 185, 190 (N.M. Ct. App. 1999) (citation omitted). "In order to prove the offense of [contributing to the delinquency of a minor], the State does not need to prove that Defendant's acts had any particular effect on the victim; it is enough that his acts encourage the child to engage in delinquent behavior." *State v. Lucero*, 884 P.2d 1175, 1178 (N.M. Ct. App. 1994) (citation omitted). In the Court's review of New Mexico case law on this offense, it is noteworthy that most cases involve overt acts directed at juveniles, and these acts undoubtedly involve conduct more culpable than Plaintiff's actions in this case. *See*, *e.g.*, *State v. Ferguson*, 423 P.2d 872 (N.M. 1967) (defendant sold alcohol to minors and allowed them to consume it on her property); *State v. Post*, 783 P.2d 487 (N.M. Ct. App. 1989) (defendant helped and encouraged minor son to commit arson); *State v. Corbin*, 809 P.2d 57 (N.M. Ct. App. 1991) (defendant showed minor employee pornographic magazine and told employee to unbutton his pants); *State v. Henderson*, 865 P.2d 1185 (N.M. Ct. App. 1993) (defendant exposed his penis to two young girls, showed them a condom, and told the girls a condom would keep them from getting pregnant).

In the instant case, Plaintiff was aware that his twenty-year-old son was dating a minor. He was further aware that Eve had run away from home and her mother reported her missing. When Defendant arrived at their home, Plaintiff and Mrs. Romero told him that Eve and Kevin had arrived at 1:00 a.m. without transportation, so the Romeros allowed them to spend the night there. Plaintiff and Mrs. Romero readily admitted this to Defendant, and further told him that they had been in regular contact with Eve's mother about her whereabouts. Defendant testified

that he had no reason to suspect the Romeros of lying. He stated that he did not want them to get in trouble, and he instructed them to contact the police if Eve came to their house again.

Having viewed the DVD recording of the entire exchange between Defendant and the Romeros, the Court is left with no question that a reasonable officer in Defendant's position could not have suspected Plaintiff of contributing to the delinquency of a minor. The Romeros allowed Eve to stay at their home – which was located in a remote area well outside the city limits – when she arrived with Kevin at 1:00 a.m. Although Eve and Kevin left early the next morning, Mrs. Romero promptly contacted Eve's mother to inform her that Eve had been there the previous night. While a more vigilant course might have been to contact the police, the Romeros' decision to allow Kevin and Eve to stay at their house, rather than turning them away in the middle of the night, cannot be said to have contributed to Eve's delinquency, particularly given their prompt notification to Eve's mother. As noted above, the only New Mexico cases this Court could find involving the criminal charge of contributing to the delinquency of a minor involve a defendant enticing a minor to engage in sexual activity, drink alcohol, or commit other criminal acts. The Court is confident that the New Mexico courts would not view Plaintiff's actions in this case – providing a place for a runaway minor to sleep and then contacting her mother the next day – as contributing to the minor's delinquency. Indeed, given the hour of the night and the location of the Romeros' home, their *refusal* to allow Kevin and Eve to stay at their home under these circumstances would have been more injurious to Eve's welfare. *See* NMRA, Crim. UJI 14-601.

Nor does the fact that dispatch returned no record for Plaintiff's provided information somehow add to Defendant's suspicion that Plaintiff had committed this underlying offense. As Defendant testified, when a record comes back with no match, this often indicates the person is

providing false information because of an active warrant for their arrest. While such a response from dispatch might appropriately arouse an officer's suspicion in a traffic stop or other similar encounter, in the instant case, Defendant knew the identity of the person he was questioning. He deliberately went to Lee Roy Romero's home to look for Eve Maestas, because Eve's mother believed Eve might be there. Defendant had no reason to suspect that Plaintiff was anyone other than Lee Roy Romero. Whatever slight hunch Defendant may have had that the results from dispatch indicated Plaintiff might be subject to a warrant, he could not have reasonably suspected this to mean that Plaintiff was harboring Eve in his home.

### III.     Other Underlying Offense

In what appears to be a last ditch effort, Defendant argues that the circumstances surrounding Plaintiff's arrest supported an objective reasonable suspicion that Plaintiff had acted as an accessory to the offense of statutory rape. This is because Plaintiff was aware that his twenty-year-old son was in a relationship with a sixteen-year-old minor, and he had allowed them to sleep at his house.

Under New Mexico law, an accessory to a crime must "procure[], counsel[], aid[] or abet[]" in the commission of a crime. N.M. STAT. ANN. § 30-1-3. It is a crime in New Mexico for a twenty-year-old man to have sexual intercourse with a sixteen-year-old girl. *See* N.M. STAT. ANN. § 30-9-11. Plaintiff's decision to allow Kevin and Eve to stay at the Romeros' home, rather than turning them away in the middle of the night, cannot be said to have procured, counseled aided or abetted Kevin to have sexual intercourse with Eve. Rather, Plaintiff and Mrs. Romero provided shelter to Kevin and Eve, who otherwise would have found themselves in a remote area outside Las Vegas with nowhere to sleep. Furthermore, as Plaintiff told Defendant on the night in question, the Romeros required Kevin and Eve to sleep separately.

Finally, Defendant also suggests that he had reasonable suspicion to believe Plaintiff was "possibly" acting as an accessory to underage alcohol consumption. Doc. 128 at 5. However, he points to no evidence in the record that Kevin and Eve drank alcohol at Plaintiff's house, let alone evidence that Defendant was aware they were drinking or provided them alcohol. The record contains no facts to support reasonable suspicion of this offense.

## CONCLUSION

As a matter of law, the record in this case from the summary judgment and trial stages conclusively establishes that at the time Defendant effected Plaintiff's arrest, he did not have reasonable suspicion to believe Plaintiff had committed the necessary predicate crime that must serve as the basis to arrest an individual for concealing identity.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reconsider Denial of Motion for Judgment as a Matter of Law (Doc. 123) is **GRANTED**.

DATED this 24th day of May, 2012.

_____
MARTHA VÁZQUEZ
United States District Court Judge

*Attorneys or Plaintiff*:
  Sharon B. Hawk

*Attorneys for Defendants*:
  James P. Sullivan
  Christina L. Brennan